UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LUIS SALAMAN, | : | |
|     *Plaintiff*, | : | |
| | : | |
| v. | : | 3:23-cv-639 (KAD) |
| | : | |
| FRANK SANCHEZ and | : | |
| FRANK GRILLO, | : | |
|     *Defendants*. | : | |

**MEMORANDUM OF DECISION**
**RE: MOTION FOR SUMMARY JUDGMENT (ECF No. 57)**

Kari A. Dooley, United States District Judge:

Plaintiff Luis Salaman asserts a claim under 42 U.S.C. § 1983 for First Amendment retaliation against New Haven Department of Police Service ("NHDPS") Sergeant Francisco (Frank) Sanchez and Officer Frank Grillo in their individual capacities. *See* Initial Review Order ("IRO"), ECF No. 12, at 6.

Defendants Sanchez and Grillo filed a motion for summary judgment. Mot. for Summ. Judgment, ECF No. 57. In support of their motion, Defendants have submitted a memorandum of law, ECF No. 57-1, and a Rule 56(a)1 Statement of Facts, ECF No. 58, with exhibits, ECF No. 59-1 through 59-10. Plaintiff filed an opposition with a memorandum of law, ECF No. 60-1, a Local Rule 56(a)1 Statement of Disputed Facts, ECF No. 60, at 5–7, his affidavit, ECF No. 60, at 8–14, and exhibits, ECF No. 60, at 15–150.

For the following reasons, the Defendants' motion for summary judgment is GRANTED.

1

**Facts**[1]

On initial review, the Court permitted Plaintiff to proceed for further development of the record on his claim that Sergeant Sanchez and Officer Grillo retaliated against him due to his having filed lawsuits concerning misconduct by NHDPS officers, including by Sanchez's alleged ex-partner Luis Lopez and/or by Officer Grillo, who Plaintiff recorded on November 3, 2021.  IRO at 2; *see* Compl. ¶¶ 14, 28.  Specifically, the Court permitted Plaintiff to pursue First Amendment claims based on the following alleged retaliatory actions: "(1) Sergeant Sanchez and Officer Grillo stopped him for a traffic violation on May 14, 2020; (2) Sergeant Sanchez arrested him in 2021 at his girlfriend's residence; and (3) his cell phone was confiscated, a false search warrant was issued, and Sanchez and Grillo arrested him on November 16, 2021."[2]  IRO at 2.

---

[1] The facts are taken from Plaintiff's Complaint, ECF No. 1, the Local Rule 56(a) Statements, and supporting exhibits filed by both parties.  This District's Local Rule 56(a)1 provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact."  Local Rule 56(a)3 provides that "each denial in an opponent's Local 56(a)2 Statement[] must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial."

Defendants informed Plaintiff of his obligation to respond to the motion for summary judgment and the contents of a proper response.  *See* Defs.' Notice to Self-Represented Litigant, ECF No. 57-2.  Rather than filing a Local Rule 56(a)2 Statement in compliance with the local rule, Plaintiff filed a Local Rule 56(a)1 statement of facts that he asserts are disputed, along with several exhibits.  *See* ECF No. 60.  The fact that Plaintiff is unrepresented does not excuse him from complying with the Court's procedural and substantive rules.  *See Wu v. Nat'l Geospatial Intel. Agency*, No. 3:14-CV-1603 (DJS), 2017 WL 923906, at *2 (D. Conn. Mar. 8, 2017) (noting in context of *pro se* plaintiff's failure to submit a Local Rule 56(a)2 statement, that "*pro se* parties are not excused from abiding by the Federal Rules of Civil Procedure" (quotation omitted)).  To the extent a party opposing a motion for summary judgment fails to submit a Local Rule 56(a)2 statement, the Court may consider a Local Rule 56(a)1 statement of fact to be admitted if supported by evidence.  *See Wright v. Quiros*, No. 3:23-CV-949 (SRU), 2025 WL 2783699, at *2 (D. Conn. Sept. 30, 2025).  Thus, Defendants' facts, when supported by the evidence of record, are deemed admitted.  *Small v. Clements*, No. 3:18-CV-1731 (KAD), 2019 WL 5727388, at *1 n.1 (D. Conn. Nov. 5, 2019) (deeming uncontroverted facts admitted where a litigant failed to file a responsive statement of facts); *see* D. Conn. L. Civ. R. 56(a)3 ("Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1, or in the Court imposing sanctions . . . .").

[2] In their briefs, both parties indicate that the Court's Initial Review Order misconstrued Plaintiff's allegations in Paragraphs 28 and 29 of his Complaint.  *See* Defs.' Mem. at 2–4; Pl.'s Mem. at 6, 10, 16.  Plaintiff clarifies that he has not made a claim that Sergeant Sanchez confiscated his cell phone or put out an arrest warrant for him, Pl.'s Mem. at 16.  In addition, he does not dispute Defendants' statement that he was *not* arrested on November 16, 2021 by any NHDPS officers, Defs.' L.R. ¶ 11.  Accordingly, the Court grants the motion for summary judgment in Defendants' favor on the First Amendment claims arising from allegations concerning the cell phone confiscation, false search

Plaintiff previously filed two legal actions that raised claims of misconduct by Lopez and other NHDPS officers: (1) he filed a civil rights complaint in federal court on April 17, 2019,[3] and (2) a state habeas action challenging his 2018 criminal conviction.[4]  Compl. ¶ 14.

On May 14, 2020, Plaintiff was stopped for a traffic violation after he pulled away from the curb at 215 Rosette Street and turned onto King Place in New Haven, Connecticut.  Defs.' L.R. ¶ 1;[5] *see* Compl. ¶ 15.  An Incident/Investigation Report states that NHDPS Officer Joshua Castellano conducted the traffic stop because Plaintiff was observed pulling away from a curb without using his turn signal.  Defs.' L.R. ¶¶ 2, 4.  As a result of the traffic stop, Plaintiff was issued a verbal warning for driving without a license and was permitted to leave without any charges against him.  *Id.* ¶ 5.

In the reporting narrative, Officer Castellano stated:

> On 5/14/2020 at approximately 2219 hours Det. Glynn and I were patrolling the area of Rosette Street in an unmarked police vehicle equipped with lights and sirens.  We observed a red Toyota Corolla pull off of the curb in front of 215 Rosette Street into traffic without using its turn signal.

---

warrant, and arrest on November 16, 2021.  The Court will, however, analyze below whether Plaintiff may proceed beyond the motion for summary judgment on a First Amendment retaliation claim—as set forth in his opposition memorandum—that Grillo used Plaintiff's son's "illegally confiscated phone" to harass Plaintiff, and that three days after Plaintiff recorded Grillo on "Facebook live," Grillo used a confidential informant to further harass and fabricate a case against him.  Pl.'s Mem. at 6, 10; *see* Compl. ¶¶ 28–29.

[3] The Court takes judicial notice of Plaintiff's federal civil rights case, *Salaman v. New Haven*, No. 3:19-CV-577 (MPS), in which Plaintiff was permitted to proceed against NHDPS Detective Luis Lopez for his alleged role in directing the arresting officer-defendants to use excessive force on Plaintiff on April 22, 2016.  *Salaman v. New Haven*, No. 3:19-CV-577 (MPS), ECF No. 9.  This case settled in November 2022.  *Id.* at ECF No. 74.

[4] In his Complaint, Plaintiff alleges that his state habeas action remains pending.  *Id.*  Review of the Connecticut Judicial website, at https://civilinquiry.jud.ct.gov/PartySearch.aspx, shows a pending habeas action filed by Plaintiff on February 7, 2020.  *See Salaman v. Comm'r of Corr.*, No. TSR-CV-20-5000519-S.

[5] Defendants' Local Rule 56(a)1 statement is supported by exhibits, including police reports and affidavits from both Defendants and from David Portela, the NHDPS Keeper of Records.  *See* ECF Nos. 59-8, 59-9, and 59-10.  The Court's consideration of the motion for summary may rely on evidence, including police records, that are admissible at trial.  *See, e.g.*, *Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017) (district court may rely on police reports at summary judgment because statements therein "could readily be reduced to admissible form at trial through the testimony of the defendant officers as to the underlying events in question").  In addition, as previously noted, Plaintiff has not filed a Local Rule 56(a)2 statement that complies with Local Rule 56(a).  *See supra* at n.1.

> Det. Glynn ran the vehicle[']s marker plate through the records division of the New Haven Police Department. While we were waiting for the results the vehicle made a series of turns[,] left and right turns driving around in circles with no apparent destination in mind. We initiated a motor vehicle stop as the vehicle pulled onto Kings Place to address the violation.
>
> The driver, Luis Salaman, immediately informed me that he did not have a valid license because he just got out of jail. His passenger . . . informed me that she had a valid CT drivers license.
>
> I asked Luis to step out of the vehicle so that they could switch seats. While speaking with Luis I asked if there was anything illegal inside the vehicle. Luis stated there was not an[d] asked if I would like to search it. A search of the vehicle did not yield any illegal contraband.
>
> Luis was given a verbal warning for operating a motor vehicle without a license.
>
> Both subjects were negative for any active wants, warrants or protective orders.
>
> Nothing further at this time.

Defs.' Ex. A, ECF No. 59-1, at 4.

In November 2020, a state warrant signed by a Connecticut Superior Court judge was issued for Plaintiff's arrest on a charge of Criminal Possession of a Firearm. Defs.' L.R. ¶ 6. In May 2021, a state warrant signed by a Connecticut Superior Court judge was issued for Plaintiff's arrest on a charge of Violation of Probation. *Id.* ¶ 7. In June 2021, a State of Connecticut Paperless Arrest Warrant Network ("PRAWN") warrant was issued for Plaintiff on charges of Criminal Possession of a Firearm and Failure to Appear.[6] *Id.* ¶ 8.

---

[6] The Judicial Branch's Paperless Arrest Warrant Network ("PRAWN") was implemented in 2002 after Public Act 00-209 authorized the entry of warrants for Failure to Appear in a central computer system. *See PRAWN*, Conn. State Crim. Justice Info. Sys., https://portal.ct.gov/cjis/services/cjis-partner-applications/prawn.

On June 24, 2021, NHDPS Sergeant Sanchez and other NHDPS officers arrested Plaintiff on the warrants issued charging Criminal Possession of a Firearm, Failure to Appear, and Violation of Probation. *Id.* ¶ 9; *see* Defs.' Ex. G, ECF No. 59-7 (arrest report dated June 24, 2021).[7]

NHDPS Sergeant Sanchez and Officer Grillo have submitted affidavits in support of the motion for summary judgment. Defs.' Ex. I (Sanchez Aff.), ECF No. 59-9; Defs.' Ex. J (Grillo Aff.), ECF No. 59-10. Both aver that they had no knowledge of, and had no participation in, the motor vehicle stop on May 14, 2020. Sanchez Aff. ¶ 7; Grillo Aff. ¶ 6. Both declare that they were not aware Plaintiff had filed two lawsuits related to misconduct by Lopez at the time of Plaintiff's traffic stop on May 14, 2020, or at the time of his arrest on June 24, 2021. Sanchez Aff. ¶¶ 4–5; Grillo Aff. ¶¶ 4–5. Sergeant Sanchez avers he never worked with Lopez as a partner, but that he had worked with Lopez in the past on cases in the Narcotics Unit and had been assigned to the same section for a period of time. Sanchez Aff. ¶ 6.

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113–14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined

---

[7] Plaintiff has also had two federal criminal cases to which he appears to make passing reference. In September 2020, Plaintiff was indicted on firearm and narcotics charges. *See United States v. Salaman*, No. 3:20-CR-192 (SRU). In July 2022, Plaintiff pled guilty in that case to one count of possession of a firearm in furtherance of a drug trafficking crime. Prior to that plea, in April 2022, Plaintiff was arrested on a criminal complaint and was subsequently indicted, along with other defendants, on additional narcotics charges. *See United States v. Salaman et al*, No. 3:22-CR-76-1 (SRU). Magistrate Judge Spector issued the arrest warrant on the complaint for the Plaintiff in that matter. *See* No. 3:22-MJ-381 (RMS). Plaintiff was tried before a jury in December 2024, and the jury returned a split verdict. Plaintiff is currently awaiting sentencing in that case.

by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense . . . ." *Giordano v. Mkt. Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010). In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth "specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). He cannot "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted). Nor can he rely on "mere speculation or conjecture as to the true nature of the facts." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quotation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

**Discussion**

Defendants maintain Plaintiff cannot prevail on his First Amendment retaliation claim as a matter of law because (1) neither Defendant was involved in the motor vehicle stop on May 14, 2020, and (2) there was probable cause to support both the motor vehicle stop on May 14, 2020,

and the arrest on June 24, 2021.  Defs.' Mem. at 7–10.  Alternatively, Defendants argue they are entitled to qualified immunity.  *Id.* at 15.[8]

### *First Amendment Retaliation*

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quotation omitted).  For a First Amendment retaliation claim, a plaintiff must show: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury."  *Rupp v. Buffalo*, 91 F.4th 623, 634 (2d Cir. 2024) (quotation omitted).

The official's retaliatory motive "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive."  *Nieves*, 587 U.S. at 399; *see Hartman v. Moore*, 547 U.S. 250, 260 (2006) (recognizing that although it "may be dishonorable to act with an unconstitutional motive," an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway"); *accord Handsome, Inc. v. Town of Monroe*, No. 23-711, 2024 WL 2747142, at *5 (2d Cir. May 29, 2024) (summary order); *Burden v. Inc. Vill. of Port Jefferson*, 664 F. Supp. 3d 276, 283 (E.D.N.Y. 2023).

As relevant to this case, the Supreme Court explained that a "plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest," *Nieves*, 587 U.S. at 402, because "the presence of probable cause should generally defeat a First Amendment retaliatory arrest claim," *id.* at 405; *see, e.g.*, *Picard v. Torneo*, No. 3:16-CV-1564 (WWE), 2019 WL 4933146, at *3 (D. Conn. Oct. 4, 2019) (granting summary judgment on First Amendment

---

[8] The Court need not consider whether Defendants are entitled to qualified immunity because Plaintiff's claims against them fail on the merits.

7

retaliation claim because police officers had probable cause to arrest plaintiff for reckless use of a highway and creating a public disturbance).

In reviewing a challenged arrest, the Court should determine "whether the circumstances, viewed objectively, justify [the challenged] action," and if so justified, the Court should conclude that the challenged action "was reasonable *whatever* the subjective intent motivating the relevant officials." *Nieves*, 587 U.S. at 403 (quotation omitted).[9]  The Supreme Court elaborated that "probable cause speaks to objective reasonableness of an arrest," and "its absence will—as in retaliatory prosecution cases—generally provide weighty evidence that the officer's animus caused the arrest, where the presence of probable cause will suggest the opposite." *Id.* at 402. The Supreme Court qualified that probable cause "generally" defeats a First Amendment retaliatory arrest claim because the rule does not apply to a plaintiff who "presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 406–07; *see also Hernaiz v. Carlson*, No. 24-CV-116 (SFR), 2025 WL 2173932, at *7 (D. Conn. July 31, 2025) (citing *Nieves*, 587 U.S. at 407).

As he is seeking damages from the Defendants, Plaintiff must also prove that Sanchez and Grillo were personally involved in the alleged First Amendment retaliation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

**Retaliatory Motor Vehicle Stop on May 14, 2020**

Plaintiff asserts that on May 14, 2020, he pulled away from the curb at 215 Rosette Street in New Haven while in a red Toyota when he noticed an unmarked police vehicle that followed him with its lights activated when he turned onto King Place in New Haven.  Pl.'s Mem. at 12–13;

---

[9] Further, "[a] particular officer's state of mind is simply irrelevant, and it provides no basis for invalidating an arrest." *Nieves*, 587 U.S. at 403 (quotation omitted).

8

*see also* Pl.'s Aff. at pp. 8–9, ¶¶ 5–6;[10] Compl. ¶¶ 14–15.  He maintains that Sergeant Sanchez approached the driver's window and asked him for his license and registration, while Officer Grillo approached the passenger side of the vehicle and spoke to Plaintiff about this son, Luis Salaman, Jr.  Compl. ¶¶ 17–18.

Plaintiff asserts that Sanchez and Grillo first stopped the motor vehicle he was driving and later called Officer Castellano to search the car and file the incident report.  Pl.'s L.R. ¶¶ 3–6; *see* Pl.'s Aff. ¶¶ 5–7.  He argues that the evidence shows both Sanchez and Grillo were "on shift" during the time of his motor vehicle stop, and therefore, there "would be evidence to corroborate" his claims of their involvement "if they stop[ped] hiding the evidence and tampering with it."  Pl.'s Mem. at 13.[11]

Both Defendants Sanchez and Grillo attest that they were not present and did not participate in the motor vehicle stop of Plaintiff on May 14, 2020.  *See* Sanchez Aff. ¶¶ 7–8; Grillo Aff. ¶¶ 6–7.  Because Plaintiff avers to both Defendants' involvement in the motor vehicle stop, *see* Pl.'s Aff. ¶¶ 5–6, and identifies evidence which he argues supports his averment, the Court concludes that there is a genuine issue of material fact as to whether Sanchez and Grillo were present for and initiated the motor vehicle stop on May 14, 2020.  That does not end the inquiry, however.  The Court must also consider whether there is sufficient evidence to establish a genuine dispute of

---

[10] In Paragraph 5 of his affidavit, Plaintiff appears to misstate the date of his motor vehicle stop as May 10, 2020, but he later refers to the stop being on May 14, 2020.  *See* Pl.'s Aff. at pp. 8–9, ¶¶ 5–6.

[11] For instance, Plaintiff refers to the calls shown on the "computer aided dispatch" (CAD), showing calls from Officer Castellano on May 14, 2020.  Pl's L.R. ¶ 6.  He argues that the "radio transmissions don't show [Castellano] calling in the actual stop, the reason for the stop," or running the check on Plaintiff.  *Id*.  He maintains that Officer Castellano's "radio transmission only shows him calling dispatch giving his location stating that he is in another part of city and is en-Route to [K]ing place where [Plaintiff] was already stopped by Defendants, (Sgt.) Frank Sanchez, (TFO) Frank Grillo," and that "[t]hese radio transmissions were not complete and were missing other transmissions from responding officers including Defendant, (Sgt.) Frank Sanchez."  *Id.*

material fact as to whether Sanchez and Grillo "retaliated against [Plaintiff] for having filed the civil actions against Officer Luis Antonio Lopez for misconduct against him."  Pl.'s Aff. ¶ 7.

Upon review, the Court concludes that there simply is no evidence from which a jury could reasonably infer that, even if Defendants initiated the motor vehicle stop on May 14, 2020, they did so because he had previously filed lawsuits asserting NHDPS officer misconduct, including by Lopez.  Plaintiff presents no evidence to dispute the Defendants' evidence that the motor vehicle stop occurred after he was observed pulling away from the curb without using his turn signal. Defs.' L.R. ¶¶ 1–4; *see* Pl.'s L.R. ¶¶ 3–4.  Thus, the undisputed record demonstrates that—consistent with the Fourth Amendment—the motor vehicle stop was supported by a reasonable suspicion or probable cause to believe he had committed a traffic violation.  *See U.S. v. Gomez*, 877 F.3d 76, 86 (2d Cir. 2017); *Arpino v. Tourjee*, No. 22-CV-765 (KAD), 2024 WL 3455839, at *3–4 (D. Conn. July 18, 2024).  Because the non-retaliatory reasons for the motor vehicle stop were sufficient to support a legitimate motor vehicle stop, Plaintiff cannot show that a retaliatory animus was the "but for" reason for the stop.  *See Arpino*, 2024 WL 3455839, at *4; *see also Lilly v. Swick*, No. 19-CV-176V, 2023 WL 3901566, at *9 (W.D.N.Y. Mar. 22, 2023) ("In as much as the Court has found that plaintiff's plea to a parking violation in satisfaction of the speeding ticket precludes him from arguing that the traffic stop was not based upon reasonable suspicion, plaintiff cannot question the motivation of PO Ullery and PO Trapasso in stopping his vehicle.").

In addition, no evidence creates a question of fact regarding whether Plaintiff was stopped for a traffic violation while "otherwise similarly situated individuals not engaged in the same sort of protected speech had not been."  *Nieves*, 587 U.S. at 407–08 (requiring "objective evidence" that the plaintiff was targeted where other similarly situated individuals were not); *see, e.g.*, *Martinez v. Browne*, No. 20-CV-111 (AMD), 2023 WL 2667075, at *6–7 (E.D.N.Y. Mar. 28,

10

2023) (granting summary judgment for defendants in "the absence of any showing that the defendants treated [plaintiff] differently than similarly situated [people]"). And the record fails to support any factual dispute as to whether Defendants were even aware of Plaintiff's lawsuits concerning Lopez and NHDPS officer misconduct which were filed prior to May 14, 2020.[12] *See* Sanchez Aff. ¶ 5; Grillo Aff. ¶ 5. It is axiomatic that without such knowledge, that causal connection cannot be established. Plaintiff's conclusory or speculative assertions about Defendants' motivation to retaliate against him for his prior litigation are not sufficient to defeat the motion for summary judgment on his First Amendment retaliation claim. *Kemp v. Regeneron Pharms., Inc.*, 117 F.4th 63, 68 (2d Cir. 2024) ("[S]peculation by the party resisting the motion will not defeat summary judgment."); *Jordan v. Olsten Corp.*, 25 F. App'x 45, 47 (2d Cir. 2001) ("[Plaintiff's] suggestion that Russell persuaded Markiewicz to fire her for racial reasons is mere speculation and thus insufficient to defeat Olsten's well supported motion for summary judgment.").

For these reasons, Defendants' motion for summary judgment is GRANTED as to the First Amendment retaliation claim arising out of the May 14, 2020 motor vehicle stop.

**Retaliatory Arrest on June 24, 2021**

There is no factual dispute that Sergeant Sanchez was involved in Plaintiff's arrest on June 24, 2021, pursuant to warrants for criminal possession of a firearm, failure to appear, and violation of probation. *See* Defs.' Exs. F, G, Arrest Reports; Sanchez Aff. ¶ 10.

---

[12] Plaintiff asserts without evidentiary foundation that Officer Castellano was called to the motor vehicle stop to conduct the search and file a report because all of the officers were aware of the "Lopez civil suit" and how Sanchez was supposed to be part of that suit. *See* Pl.'s Mem. at 12. Plaintiff maintains that Sanchez "should have been a part of the civil action against [Lopez] because he was a part of that case as well," and that during the motor vehicle stop, Sanchez was told to sit in his car because the other officers were aware of the situation with Lopez. Pl.'s L.R. ¶ 7; Pl.'s Mem. at 12, *see also* Pl.'s Aff. ¶ 7 (stating Sanchez "aided Officer Lopez in 'fabricating' a criminal case against Plaintiff, Luis Salaman on July 26, 2014"). But Plaintiff provides no evidence or information about Grillo's awareness of his litigation involving Lopez, and his allegations as to Sanchez are wholly conclusory and speculative.

"[A]n arrest pursuant to a facially valid arrest warrant is presumed to be made with probable cause." *Martinetti v. Town of New Hartford*, 12 F. App'x 29, 32 (2d Cir. 2001) (summary order). A plaintiff may overcome this presumption by showing that "the officer submitting the probable cause affidavit 'knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit' or omitted material information, and that such false or omitted information was 'necessary to the finding of probable cause.'" *Chase v. Nodine's Smokehouse, Inc.*, 360 F. Supp. 3d 98, 113 (D. Conn. 2019) (quoting *Soares v. Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993)). "Recklessness may be inferred where the omitted information was clearly critical to the probable cause determination." *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991) (citations and internal quotation marks omitted).

"Unsupported conclusory allegations of falsehood or material omission cannot support a challenge to the validity of the warrant; rather, the plaintiff must make specific allegations supported by an offer of proof." *Calderon v. City of New York*, 138 F. Supp. 3d 593, 604 (S.D.N.Y. 2015) (internal quotation marks omitted); *Parker v. Zugibe*, No. 16-CV-4265 (KMK), 2017 WL 4296795, at *5 (S.D.N.Y. Sept. 26, 2017) ("Plaintiff's bald assertion that the warrant contained false statements does not plausibly state a claim that Officer Fantasia knowingly and intentionally, or with reckless disregard for the truth, made a false statement." (internal quotation marks and citation omitted)).

Here, it is utterly unclear the extent to which Plaintiff claims that the arrest warrants, signed by a judicial authority and served on June 24, 2021, lacked probable cause or were procured by the knowing or reckless use of false information. There are allegations of "fake" warrants resulting in the search of Plaintiff's son's cell phone. *See* Compl. ¶ 29. There are allegations of false

statements in the application for an arrest warrant made to Magistrate Judge Spector,[13] *see id.* ¶¶ 44, 46–47, but the warrant signed by Judge Specter was related to Plaintiff's second federal indictment (initiated in April 2022), and thus, it has no connection to the warrant executed on June 24, 2021.  And Plaintiff does not offer any evidentiary support for these assertions even if they had some bearing on the June 24, 2021 arrest.  Accordingly, there is no evidentiary basis upon which to rebut the presumption of probable cause for Plaintiff's arrest pursuant to those warrants on June 24, 2021.  *See Parker v. Fantasia*, No. 16-CV-4265, 425 F. Supp. 3d 171, 186 (S.D.N.Y. 2019) (collecting cases).  Nor is there any evidence, and Plaintiff does not argue, that he is not required to defeat a finding of probable cause insofar as "otherwise similarly situated individuals not engaged in the same sort of protected speech had not been" arrested.  *Nieves*, 587 U.S. at 407-08.[14]

Accordingly, no reasonable jury could determine after a review of the present record that Plaintiff was subjected to First Amendment retaliation when he was arrested pursuant to active warrants on June 24, 2021.  The motion for summary judgment as to this claim is GRANTED.

**Retaliation by Officer Grillo on November 16, 2021**

In his opposition memorandum, Plaintiff represents that his son's cell phone[15] was "illegally confiscated" on October 2, 2020, and was later "used to further harass [Plaintiff] by

---

[13] Judge Spector issued the warrant on the criminal complaint in the case which resulted in Plaintiff's second federal prosecution.  *See generally United States v. Salaman*, No. 3:22-CR-76-1 (SRU).

[14] Plaintiff claims that during his arrest by an NHPDS officer on January 27, 2021, Sergeant Sanchez drove by and yelled, "Nice catch."  Compl. ¶ 26; Pl.'s Aff. ¶ 14; Pl.'s Mem. at 6.  He complains that he was not able to obtain the body camera footage showing Sergeant Sanchez's conduct on January 27, 2021.  Pl.'s Aff. ¶ 14.  Because a First Amendment violation is only viable if the retaliatory motive is the "but-for" cause of an arrest, and Plaintiff has not shown that his arrest on June 24, 2021, lacked probable cause, evidence concerning Sergeant Sanchez's personal animus against Plaintiff cannot not defeat the motion for summary judgment.  *See Nieves*, 587 U.S. at 399, 403 (explaining retaliatory motive must be "but for" cause and officer's state of mind is irrelevant and not a basis for invalidating an arrest).

[15] Plaintiff explains that his son's cell phone was seized by Officer Grillo and another officer during a protective sweep on October 2, 2020, and that the federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") obtained a warrant to search the cell phone.  Pl.'s Aff. ¶ 9; Pl.'s Mem. at 2.  He maintains that, during his second federal criminal case, District Judge Meyer expressed "concern" about the testimony of Officer Grillo during

[Grillo] on November 16, 2021." *See* Pl.'s Mem. at 10; Compl. ¶¶ 28–29.[16]  He also asserts that he "recorded" Grillo on "Facebook live . . . stating 'you going to see how good I do my job'" on November 3, 2021, and "13 days later . . . Grillo made good" on his threat by using a confidential informant to "further harass and fabricate a case against [him] in retaliation for filing civil complaints/actions against Officer Luis Antonio Lopez."  *See* Pl.'s Mem. at 6, 10; Pl.'s Aff. ¶¶ 15–16; Compl. ¶¶ 28–29.

Plaintiff's wholly conclusory assertions that Officer Grillo subjected Plaintiff to retaliatory harassment through the use of the cell phone and by working with a confidential informant do not support a plausible claim of First Amendment retaliation by Officer Grillo.  Nor does the actual evidence suggest any First Amendment retaliation by Officer Grillo.  Plaintiff cites to evidence showing Officer Grillo worked with the Federal Bureau of Investigation (FBI) regarding the confidential informant, but there is no information in these documents from which a jury could infer that Officer Grillo was motivated to work with a confidential informant and the FBI because

---

a hearing on a motion to suppress evidence from the cell phone.  *See* Pl.'s Aff. ¶ 9; *United States v. Salaman*, No. 3:20-CR-192 (JAM), 2021 WL 5298075, at *4 (D. Conn. Nov. 15, 2021).  In his ruling on the motion to suppress, Judge Meyer concluded that the protective sweep and the cell phone seizure were lawful but also expressed the following:

> I am . . . concerned about the testimony of Officer Grillo that there is a "common practice" to engage in a "secondary sweep" of a home as a form of "busy work" after agents have already completed an "initial sweep of the house," just "to make sure that nothing was missed."  If so, this practice conflicts with *Buie*'s command that a protective sweep must last "no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises."  494 U.S. at 335–36; *see also Robertson*, 239 F. Supp. 3d at 450–52, 458–59 (suppressing evidence where ATF unlawfully prolonged protective sweep of defendant's residence for improper purpose of searching for narcotics evidence).

*Salaman*, 2021 WL 5298075, at *4.  Judge Meyer's concerns about Officer Grillo's testimony were not about Officer Grillo's credibility or his motivations.  The concern was regarding what was described as a common police practice.  As such, Judge Meyer's decision bears no relevance as to whether Officer Grillo took retaliatory action against Plaintiff for his prior litigation.

[16] The Court notes Plaintiff did not file an amended complaint to clarify his claim against Officer Grillo as it pertains to the seizure of his son's cell phone, although the Court afforded him leave to amend.  *See* IRO at 6.  As such, it remains utterly unclear how the phone seized in October 2020 was thereafter used to harass Plaintiff in November 2021, and the extent to which this conduct implicates Plaintiff's First Amendment rights, if at all.

of a retaliatory animus against Plaintiff for filing prior lawsuits or for his recording of Officer Grillo. *See* Pl.'s Exs. 19 to 21, ECF No. 60. Moreover, there is no evidence in the record to suggest Officer Grillo used the cell phone to harass Plaintiff in retaliation for his prior First Amendment protected conduct. Because neither the allegations of the Complaint nor the record evidence is sufficient to sustain a First Amendment retaliation claim based on Grillo's alleged use of the cell phone and work with the confidential informant, the Court dismisses such claim under 28 U.S.C. § 1915(e)(2)(B).[17]

## CONCLUSION

For the foregoing reasons, the motion for summary judgment is GRANTED. Plaintiff's claim of First Amendment retaliation against Officer Grillo based on harassment through the use of his son's cell phone and work with the confidential informant is DISMISSED under 28 U.S.C. § 1915(e)(2)(B).

To the extent Plaintiff is asserting any state law claims, the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3), and the Court dismisses any such claims without prejudice.[18]

---

[17] Defendants have not specifically moved for summary judgment on the claim against Officer Grillo for First Amendment retaliation as set forth in Plaintiff's memorandum, likely because the existence of any such claim is not apparent in the body of the Complaint, as discussed. Thus, the Court dismisses this claim under § 1915(e)(2)(B)(i)–(iii), which permits the Court to dismiss at any time claims that are not plausible or that are frivolous.

[18] *See Collins v. Feder*, No. 3:23-CV-71 (KAD), 2024 WL 5058435, at *7 (D. Conn. Dec. 10, 2024) (declining to exercise supplemental jurisdiction over state law claim and dismissing such claims without prejudice).

The Clerk of the Court is instructed to enter judgment in favor of the Defendants and to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 29th day of January, 2026.

                              */s/ Kari A. Dooley*
                              KARI A. DOOLEY
                              UNITED STATES DISTRICT JUDGE